UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

EVERLAST WORLD'S BOXING HEADQUARTERS
CORPORATION,

Case No. 12 Civ. 5297
(PAE)

Plaintiff,

-against-

RINGSIDE, INC., COMBAT BRANDS, LLC and
RAL, LLC,

Defendants.

------------------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COMPLAINT OR TRANSFER

JED R. SCHLACTER, ESQ.
SCHLACTER & ASSOCIATES
Attorneys for Plaintiff
450 Seventh Avenue, Suite 1308
New York, NY 10123
212 695-2000

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ **1**

STATEMENT OF FACTS ......................................................... **2**

ARGUMENTS:

    POINT I:     Standard for Motion to Dismiss for Lack of
                 Personal Jurisdiction                    **7**

    POINT II:    The Defendants Have Conceded that this Court
                 Has Personal Jurisdiction Over Defendant
                 Ringside, Inc.                    **9**

    POINT III:   This Court Has Jurisdiction of the Defendants
                 RAL and Combat Brands Under the Doctrines of
                 Alter Ego, Successor and/or De Facto Merger Liability  **13**

    POINT IV:   In the Event this Court Believes That There Are Open
                 Issues to be Resolved in Order to Exercise
                 Jurisdiction Over Any of the Defendants, Then
                 Discovery on such Issues is Warranted        **18**

    POINT V:    Transfer to Kansas is Not Warranted in this Matter  **19**

CONCLUSION ........................................................................ **22**

## TABLE OF CASES AND AUTHORITIES

**Page**

*Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637 (S.D.N.Y. 2008)                    20

*Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*,
    775 F. 2d 38 (2d Cir. 1985)                    8, 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)                    7

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)                    12

*Bison Capital Corp. v. ATP Oil & Gas Corp.*, 2010 WL 2697121
    (S.D.N.Y. 2010), *report and recommendation adopted*,
    2010 WL 3733927 (S.D.N.Y. 2010)                    7

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006)                    12, 20

*Fitzgerald v. Fahnestock & Co.*, 286 A.D. 2d 573, 574 (1ˢᵗ Dept. 2001)                    16

*Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)                    14

*Gulf Ins. Co. v. Glasbrenner*, 417 F. 3d 353, 357 (2d Cir. 2005)                    19

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F. 3d 111 (2d Cir. 2010)                    14

*Marine Midland Bank, N.A. v. Miller*, 664 F. 2d 899, 904 (2d Cir. 1981)                    8, 13

*MWH International, Inc. v. Inversora Murten S.A.*, 2012 U.S. Dist.
    LEXIS 109210 (S.D.N.Y. 2012)                    12, 14, 19

*Packer v. TDI System, Inc.*, 959 F. Supp. 192, 197 (S.D.N.Y. 1997)                    11, 12

*Pandeosingh v. American Med. Response*, 2012 U.S. Dist. LEXIS 19187
    (E.D.N.Y. 2012)                    8, 13, 19

*Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp. 2d 369 (S.D.N.Y. 2000)                    12

*Schomann International Corp. v. Northern Wireless, Ltd.*,
    35 F. Supp. 2d 205 (N.D.N.Y. 1999)                    12

**Page**

*Securities & Exchange Comm. v. Aimsi Technologies,*
   650 F. Supp. 2d 296 (S.D.N.Y. 2009)                                8, 13

*Shpak v. Curtis,* 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. 2011)        20, 21, 22

*Silverman Partners LP v. Verox Group,* 2010 U.S. Dist. LEXIS 71977,
   (S.D.N.Y. 2010)                                                     15, 16

*Southern New England Telephone v. Global Naps,*
   624 F. 3d 123, 138 (2d Cir. 2010)                                   8, 14

*Sunward Electronics, Inc. v. McDonald,* 362 F. 3d 17 (2d Cir. 2004)   10

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,*
   571 F. 3d 221, 224 (2d Cir. 2009)                                   8, 13


**Miscellaneous:**

28 U.S.C. Section 1391(b)                                              19

28 U.S.C. Section 1404(a)                                             1, 20

28 U.S.C. Section 1631                                                 1

CPLR Section 302                                                      10, 12

Fed. R. Civ. Pro. 12(b)(2)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

EVERLAST WORLD'S BOXING HEADQUARTERS
CORPORATION,

                                          Case No. 12 Civ. 5297
                                          (PAE)

                    Plaintiff,

        -against-

RINGSIDE, INC., COMBAT BRANDS, LLC and
RAL, LLC,

                    Defendants.

-----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COMPLAINT OR TRANSFER

## INTRODUCTION

The plaintiff, Everlast World's Boxing Headquarters Corporation, by its attorneys,

Schlacter & Associates, submits this Memorandum of Law in opposition to the motion of the

defendants seeking either to dismiss this case, pursuant to Federal Rule of Civil Procedure

12(b)(2), for alleged lack of personal jurisdiction, or alternatively, to transfer this action to the

United States District Court for the District of Kansas, pursuant to 28 U.S.C. Section 1404(a) and

28 U.S.C. Section 1631.

For the reasons set forth herein, and in the accompanying affidavits of Jed R. Schlacter

and Neil Morton dated September 28, 2012, it is respectfully submitted that the Complaint and

accompanying papers allege sufficient facts for this Court to exercise jurisdiction over the

defendants, and therefore the defendants' motion should be denied.  Alternatively, in the event

this Court is unsure of its authority to exercise jurisdiction over any of the defendants, then

plaintiff requests the opportunity to conduct discovery as to this issue.


## STATEMENT OF FACTS


The instant action was commenced by plaintiff, Everlast World's Boxing Headquarters

Corporation ("Everlast"), against the defendants Ringside, Inc. ("Ringside"), Combat Brands,

LLC ("Combat") and RAL, LLC ("RAL").  The Complaint contains seven causes of action, as

follows:

| | |
|---|---|
| 1st cause of action: | Against Ringside, for breach of contract |
| 2nd cause of action: | Against Combat and RAL for breach of contract, based on allegations of alter ego, successor and/or de facto merger claims |
| 3rd cause of action: | Against all defendants for alleged trademark infringement |
| 4th cause of action: | Against all defendants for alleged false designation of origin, etc. |
| 5th cause of action: | Against all defendants for federal trademark dilution |
| 6th cause of action: | Against all defendants for alleged unjust enrichment |
| 7th cause of action: | Against all defendants, seeking a permanent injunction |


This action arises based on Trademark License Agreements between Everlast and

Ringside, and Everlast's assertions that Ringside has breached those License Agreements, and

that all of the defendants are allegedly selling products containing Everlast's trademarks without

any right to do so, and in violation of Everlast's trademark and affiliated rights.

Significantly, paragraph 3 of the Complaint reads as follows:

> 3.    The defendant Ringside, by its authorized representatives, came to
> New York City to negotiate and finalize the various agreements involved herein.
> Said agreements contain a provision indicating that the law of New York governs
> the agreements. In addition, the defendant Ringside has transacted business in
> New York State and in this District, including but not limited to purchasing
> significant amounts of products from plaintiff in New York City, and, upon
> information and belief, selling significant products to New York residents.
> Further, defendant Ringside has operated a website or websites that advertise,
> offer for sale, and sell various products, including the Licensed Products involved
> herein, to customers, including customers in the State of New York and in this
> District. This Court may therefore exercise personal jurisdiction over Ringside,
> pursuant to N.Y. Civ. Prac. L. & R. Sections 301 and 302, based upon its contacts
> with this forum, including at least regularly and intentionally doing business here
> and committing acts giving rise to this lawsuit. This Court may also exercise
> jurisdiction over the other defendants, who are alter-egos and/or successors to
> Ringside, and/or are one and the same as Ringside by virtue of their *de facto*
> merger with Ringside, as more particularly described below.

In the defendants' current motion, they have not denied any of the allegations relating to Ringside

in this paragraph 3 of the Complaint. The defendants have submitted two affidavits in support of

their motion, one by John Brown and one by Greg Orman. The Brown affidavit admits that he,

John Brown, is the sole owner of both Ringside and RAL, thereby confirming a continuity of

ownership, as discussed in relation to the successor-de facto merger allegations discussed *infra*.

While Brown asserts that neither Ringside nor RAL have any employees in New York, offices in

New York, bank accounts in New York or licenses to do business in New York, Mr. Brown does

not deny the specific allegations in paragraph 3 of the Complaint, to wit, that (a) authorized

representatives of Ringside came to New York to negotiate and finalize the License Agreements;

(b) the License Agreements contain provisions indicating that New York law governs the

Agreements; (c) Ringside purchased significant amounts of products from plaintiff in New York

City, and sold significant amounts of products to New York residents; and (d) Ringside operated

a website or websites to advertise, offer for sale and sell various products, including the Licensed

Products, to customers in New York and this District.


In fact, it is noteworthy that Mr. Brown merely states, in his paragraph 5, that neither he

nor RAL employees "travel to New York with regard to RAL." Again, he does not deny that

Ringside employees came to New York to negotiate and finalize the License Agreements. He

also states in his paragraph 8 that RAL does not direct sales or marketing activities toward New

York – but he fails to deny that Ringside did just that.


Furthermore, Mr. Brown notes in his affidavit at paragraph 2 that there was a lawsuit in

the Johnson County, Kansas, District Court against Ringside by its lender, Premier Bank, and

that although a Receiver had originally been appointed in that matter, the Receiver was dismissed

on June 26, 2012 because Ringside was apparently selling its assets to two entities, and the bank

was approving the sale. However, it is significant that Mr. Brown neglected to advise this Court

that the two entities to which Ringside purportedly transferred its assets were Mr. Brown's own

firm, defendant RAL, and the other co-defendant, Combat. In addition, it is also significant that

Mr. Brown has failed to annex to his papers the actual documents reflecting the transfer of

Ringside's assets.  And it is further significant that Mr. Brown does not assert that Ringside has

any assets left, or that Ringside is still an operating company.  With this silence it is fair to

presume and infer that Ringside has in fact ceased all operations, which is an element of

successor-de facto merger liability, as discussed *infra*.


As for the Greg Orman affidavit, he too fails to deny any of the significant allegations of

the Complaint as related to Combat Brands.  For instance, although he states that John Brown is

not an owner of Combat Brands, he also states that he - Orman - is a majority owner, but does

not state who else has an ownership interest in Combat Brands.  And all he thereafter states is

that neither he nor any other Combat Brands employee has traveled to New York to deal with

Everlast - but that is not surprising, since Combat Brands was just formed in late June 2012, and

promptly sued in early July.


What is significant is the fact that Mr. Orman - and Combat Brands - do not deny the

allegations in the Complaint which assert that:


      A.      An employee and in fact an officer of Combat Brands, LLC is Orin Borgelt,

              who was, at least until June 19, 2012, the President of Ringside (Para.'s 32

              and 36);


      B.      At the time of the formation of Combat Brands, LLC, Orin Borgelt (and

therefore Combat Brands, LLC) knew that the agreements between Everlast and Ringside had been terminated; they knew that Ringside had no right to continue to sell any of the Licensed Products or use the Everlast Intellectual Property; and they knew that Ringside owed millions of dollars to Everlast (Para. 33);

C.      Ringside has used the name "Combat Sports" in its business and RAL and Combat Brands are using that name, as well as the Ringside name, to sell products (Para.'s 34 and 39);

D.      Combat Brands and RAL are operating from the same premises as Ringside; either or both of them have allegedly hired at least 80% of the staff and management of Ringside; they are continuing to operate the website(s) of Ringside; and they are doing business as "Ringside" and as "Combat Sports", which were the names utilized by Ringside to do its business.  There is therefore a continuity of management, personnel, physical location and general business operations between and among Ringside, Combat and RAL, and clearly a continuity of ownership between Ringside and RAL (Para.'s 39 and 40).

As set forth below, this Court clearly has jurisdiction over Ringside.  The only issue is whether this Court may also exercise jurisdiction against co-defendants RAL and Combat

Brands.  It is respectfully submitted that the Complaint pleads sufficient facts in order to uphold jurisdiction over RAL and Combat Brands on the basis of the doctrines of alter ego, successor and/or de facto merger.

Alternatively, in the event this Court has any doubts as to its jurisdiction over any of the defendants, then plaintiff requests the opportunity to conduct discovery, as set forth below, on this issue.

## ARGUMENTS

## POINT I

## STANDARD FOR MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

To survive a motion to dismiss, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).  In addition, notwithstanding the *Iqbal* decision, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Bison Capital Corp. v. ATP Oil & Gas Corp.*, 2010 WL 2697121 (S.D.N.Y. 2010), *report and recommendation adopted*, 2010 WL 3733927 (S.D.N.Y. 2010).

Where a district court, in determining a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss, relies on the pleadings and affidavits, and chooses not to hold a full-blown evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, which may be made through the plaintiff's own affidavits and supporting materials. In addition, under such circumstances, the plaintiff's pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in its favor. *Southern New England Telephone v. Global Naps*, 624 F. 3d 123, 138 (2d Cir. 2010).

It is well-settled in this district that alter egos are treated as one entity for jurisdictional purposes. *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F. 3d 221, 224 (2d Cir. 2009); *Pandeosingh v. American Med. Response*, 2012 U.S. Dist. LEXIS 19187 (E.D.N.Y. 2012); *Securities & Exchange Comm. v. Aimsi Technologies*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009). Furthermore, "'[e]stablishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.'" *Securities & Exchange Comm. v. Aimsi Technologies*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009); *Marine Midland Bank, N.A. v. Miller*, 664 F. 2d 899, 904 (2d Cir. 1981). Similarly, where a company is a successor or there is a de facto merger, that company will also be subject to jurisdiction in the place where the original company was subject to such jurisdiction. *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F. 2d 38 (2d Cir. 1985).

For the reasons detailed below, and based on the allegations in the Complaint and the

annexed affidavits of Jed R. Schlacter and Neil Morton, with the exhibits annexed thereto, it is respectfully submitted that the Complaint sufficiently pleads allegations regarding alter ego, successor and de facto merger as concerns defendants RAL, LLC and Combat Brands, LLC, for this Court to exercise jurisdiction over them.


## POINT II

### THE DEFENDANTS HAVE CONCEDED THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT RINGSIDE, INC.

As set forth in our Statement of Facts above, it is highly significant that none of the defendants in this action have denied any of the allegations set forth in paragraph 3 of the Complaint.  Thus, the defendants have conceded, and this Court must accept as true, the following assertions in paragraph 3:

A.    The defendant Ringside, by its authorized representatives, came to New York City to negotiate and finalize the License Agreements involved in this matter.

B.    The License Agreements contain a provision indicating that the law of New York governs the agreements.

C.    Ringside has transacted business in New York State and in this District, including but not limited to purchasing significant amounts of products from plaintiff in New York City, and selling significant products to New York residents.

D.    Ringside has operated a website or websites that advertise, offer for sale, and sell various products, including the Licensed Products involved herein, to customers,

including customers in the State of New York and in this District.

Section 302(a)(1) of the New York Civil Practice Law and Rules refers to a court exercising personal jurisdiction over non-domiciliaries.  Among the bases for exercising personal jurisdiction are where the non-domiciliary:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
>    (i) regularly does business or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

The Second Circuit has indicated that several factors are to be considered in determining whether an out-of-state defendant transacts business in New York.  As set forth in *Sunward Electronics, Inc. v. McDonald*, 362 F. 3d 17 (2d Cir. 2004), these factors include:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

The Court also stated that no one factor set forth above was dispositive, and that other factors

could also be considered.  It further noted that "[a] choice of law clause is a significant factor in a

personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and

protections of New York law." *Id.* at 23.

In the case at bar, the defendants have not denied the allegations of the Complaint that (1)

the License Agreements were negotiated and finalized in New York, or that (2) the Agreements

contain a choice-of-law clause, identifying New York law as the controlling law.  In addition, it

is incontestable that Ringside and Everlast had an on-going contractual relationship by virtue of

the License Agreements, as they were Agreements that were scheduled to last for many years (the

Trademark License regarding Boxing Products was for the period of January 1, 2009 through

December 31, 2018 [Para. 10 of the Complaint], and the Trademark License regarding the

Everlast Catalogue and Website was for the period of August 29, 2009 through April 30, 2019

[Para. 15 of the Complaint]).

Nor have defendants denied that Ringside has transacted business in New York as

asserted in paragraph 3 of the Complaint (Brown merely states that Ringside was not

"authorized" to transact business in New York).

It has been held that a defendant's presence in New York to negotiate or execute a

contract, justifies the court in exercising personal jurisdiction over that person or entity.  *Packer*

*v. TDI System, Inc.*, 959 F. Supp. 192, 197 (S.D.N.Y. 1997).

Additionally, "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) . In this matter, it can not be disputed that the claims of Everlast for breach of the License Agreements arise from the very business between the companies relating to those License Agreements. *Schomann International Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205 (N.D.N.Y. 1999); *Packer v. TDI System, Inc.*, 959 F. Supp. 192, 197 (S.D.N.Y. 1997).

As for constitutional due process, it has been held that "[b]ecause New York's long-arm statute is more restrictive in conferring courts with personal jurisdiction over out-of-state defendants than that afforded by constitutional due process principles, if a complainant can meet the longarm's statutory requirements then the constitutional principles are satisfied. See *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006)". *MWH International, Inc. v. Inversora Murten S.A.*, 2012 U.S. Dist. LEXIS 109210 (S.D.N.Y. 2012).

Thus, this Court clearly has jurisdiction over Ringside pursuant to Section 302(a)(1) of the CPLR.[1]

---

[1] This Court also has jurisdiction under Section 302(a)(3) of the CPLR, as the tortious acts of Ringside involve, *inter alia*, the alleged continued sales of Everlast products after termination of the License Agreements (which defendants have not denied), and Ringside has not denied regularly doing business or soliciting business in New York, and deriving substantial revenues from New York or from interstate commerce. Moreover, contrary to defendants' assertion at page 11 of its Memorandum of Law, plaintiff's trademark related claims do not require a claim that defendants are selling counterfeit goods. A licensee of a trademark, who continues to sell licensed products with the trademark after the license has terminated and without any right or authority from the licensor, may commit trademark infringement. *Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp. 2d 369 (S.D.N.Y. 2000).

**POINT III**

**THIS COURT HAS JURISDICTION OF THE DEFENDANTS RAL AND COMBAT BRANDS UNDER THE DOCTRINES OF ALTER EGO, SUCCESSOR AND/OR DE FACTO MERGER LIABILITY**

As noted earlier, in this District alter egos are treated as one entity for jurisdictional purposes. *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F. 3d 221, 224 (2d Cir. 2009); *Pandeosingh v. American Med. Response*, 2012 U.S. Dist. LEXIS 19187 (E.D.N.Y. 2012); *Securities & Exchange Comm. v. Aimsi Technologies*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009). Furthermore, "'[e]stablishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.'" *Securities & Exchange Comm. v. Aimsi Technologies*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009); *Marine Midland Bank, N.A. v. Miller*, 664 F. 2d 899, 904 (2d Cir. 1981).

Similarly, where a company is a successor or there is a de facto merger, that company will also be subject to jurisdiction in the place where the original company was subject to such jurisdiction (in this case, New York). *Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc.*, 775 F. 2d 38 (2d Cir. 1985).

With respect to the doctrine of alter ego liability, it has been stated that "[a]lter ego liability exists when a parent or owner uses the corporate form 'to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's

business rather than its own.' *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F. 3d 111, 195 (2d Cir. 2010);   *Southern New England Telephone v. Global Naps*, 624 F. 3d 123, 138 (2d Cir. 2010).  See also *MWH International, Inc. v. Inversora Murten S.A.*,  2012 U.S. Dist. LEXIS 109210 (S.D.N.Y. 2012) ["'Alter-ego liability attaches if the following elements are established: (1) control amounting to complete domination with respect to the transaction attacked; (2) the use of such control to perpetuate a fraud or wrong, including a violation of a positive legal duty; and (3) the control and breach of duty must proximately cause the injury complained of.'"].

In the instant matter, the Complaint asserts, and the Brown affidavit now confirms, that Brown was the sole owner of Ringside and is the sole owner of RAL - he therefore indisputably has complete control over said firms.  The Complaint also asserts that Ringside was in breach of its License Agreements with Everlast, and that Brown caused the formation of RAL and the transfer of Ringside's assets to RAL, for the purpose of making Ringside judgment proof and thereby defrauding Everlast of the monies to which it is entitled, and that Brown's actions have in fact caused Everlast to sustain damages.  (Complaint Para.'s 20 - 31, 38 - 41).

It is therefore submitted that the Complaint has sufficiently pleaded facts to warrant the exercise of this Court's jurisdiction over RAL under the alter ego doctrine.  As for Combat Brands, the affidavit of Jed R. Schlacter and exhibits annexed thereto, which include a Consignment Agreement between RAL and Combat Brands; an agreement by Combat Brands to be partially liable if RAL fails to repay the bank a loan in the sum of $600,000; an agreement by

Combat Brands to be liable for, at least, vacation liabilities of Ringside; and a provision in the Consignment Agreement referring to the possible change of ownership of Combat Brands, all raise serious issues as to whom is exercising control over Combat Brands.  Nonetheless, it is submitted that sufficient facts have been asserted as against Combat Brands to also allow this Court to exercise jurisdiction as against Combat Brands.

The elements necessary to hold a firm liable as a successor are one of the following:

1.      A buyer formally assumes a seller's debts;

2.      The transaction was undertaken to defraud creditors;

3.      A buyer who de facto merged with a seller; or

4.      A buyer that is a mere continuation of a seller.

*Silverman Partners LP v. Verox Group*, 2010 U.S. Dist. LEXIS 71977, (S.D.N.Y. 2010).  The "mere continuation" exception has been held to apply where the predecessor transfers its assets, business location, address, employees, good will and management.  *Silverman, supra.*

In the matter at bar, the Complaint alleges that RAL has obtained the assets of Ringside without fair consideration and for the purpose of defrauding Ringside's creditors (Para. 38), and that RAL and Combat Brands occupy Ringside's business premises; have hired at least 80% of Ringside's staff, including executive employees; are using Ringside's websites; are doing business as "Ringside" and "Combat Sports", which were names purportedly owned and used by

Memos - Everlast - Ringside -dismiss                            15

Ringside; and therefore there is a "continuity of management, personnel, physical location and general business operations between and among Ringside, Combat and RAL." (Para. 39 of the Complaint). In addition, the Brown affidavit confirms that he was the sole owner of Ringside, and is the sole owner of RAL, and therefore there is clearly a continuity of ownership as between Ringside and RAL. Therefore, it is submitted that the allegations of the Complaint state facts sufficient for this Court to exercise personal jurisdiction over the defendants on the theory of successor liability.

Concerning the "de facto merger doctrine", it also creates an exception to the general principle that the acquiring corporation is not responsible for the pre-existing liabilities of the acquired corporation. However, as set forth in *Fitzgerald v. Fahnestock & Co.*, 286 A.D. 2d 573, 574 (1st Dept. 2001):

> The hallmarks of the de facto merger doctrine include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation.

The court also held that "[n]ot all of these elements are necessary to find a de facto merger", and that actual dissolution of the acquired corporation was not necessary – "So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made." *Id.* at 575. See also *Silverman Partners LP v. Verox Group*, 2010 U.S. Dist. LEXIS 71977, (S.D.N.Y. 2010).

Memos - Everlast - Ringside -dismiss                    16

In the matter at bar, the Complaint asserts that Ringside has been divesting itself of all of its assets to the co-defendants and has been in the process of liquidation (Para.'s 38, 40). Significantly, the Brown affidavit does not deny that Ringside has become "shorn of its assets", but very coyly asserts that its bank foreclosed "upon certain Ringside's assets", and he cites the Kansas court order of June 26, 2012 which refers to Ringside's "bulk sales of portions of the Property to two different entities . . ." However, the document entitled "Settlement and Release Agreement" annexed to the Schlacter affidavit as Exhibit 1 clearly indicates on the first page that whereas Combat Brands purportedly purchased some assets of Ringside, RAL purchased "all of the RINGSIDE Personal Property which is not purchased by Combat." Hence, it is clear that that part of the de facto merger doctrine concerning the acquired corporation being shorn of its assets, is present in this matter, and properly alleged in the Complaint.

Additionally, as noted above, the Complaint also alleges the element of the de facto merger doctrine that concerns the continuity of management, personnel, physical location, assets and general business operation.

And as concerns continuity of ownership, the Complaint alleges in Paragraph 31, and the Brown affidavit confirms, that John Brown was the sole owner of Ringside, and is the sole owner of RAL, thereby satisfying the continuity of ownership element of the de facto merger doctrine. And as concerns that element with respect to Combat Brands, although the Orman affidavit asserts that Brown does not have any ownership in Combat Brands, Orman has not indicated who the owners of Combat Brands are, and it is particularly noteworthy that the

Consignment Agreement between RAL and Combat Brands (annexed to the Schlacter affidavit

as Exhibit 3) contains a provision in paragraph 13 that:

> [i]n the event there is a "change of control" of Combat, RAL shall have the right
> to immediately terminate this Agreement by written notice of termination to
> Combat.  As used herein, a "change of control" shall mean any change of
> ownership of Combat.

Thus, that document apparently contemplates a forthcoming change of control, and such a change

can occur by a new person or entity owning even a small percentage of Combat Brands.  Because

of the intertwined relationship between RAL and Combat Brands, it is not difficult to presume

that at some point John Brown - and/or representatives of him - either are or will in fact become

owners of Combat Brands.

Consequently, it is submitted that the Complaint clearly alleges facts upon which this

Court can exercise jurisdiction over at least RAL based on the de facto merger doctrine.

## POINT IV

### IN THE EVENT THIS COURT BELIEVES THAT THERE ARE OPEN ISSUES TO BE RESOLVED IN ORDER TO EXERCISE JURISDICTION OVER ANY OF THE DEFENDANTS, THEN DISCOVERY ON SUCH ISSUES IS WARRANTED

As detailed in the accompanying affidavit of Jed R. Schlacter, Everlast has obtained a

limited number of documents in this matter relating to the transactions of the defendants.

However, those documents raise as many questions as they might answer.  Therefore, it is also

respectfully submitted that if this Court hesitates to exercise jurisdiction over each of the

defendants because of open issues relating to the doctrines of alter ego, successor or de facto

merger liability, then discovery over such issues is warranted and should be allowed.  See

*Pandeosingh v. American Med. Response*, 2012 U.S. Dist. LEXIS 19187 (E.D.N.Y. 2012); *MWH*

*International, Inc. v. Inversora Murten S.A.*, 2012 U.S. Dist. LEXIS 109210 (S.D.N.Y. 2012).


### POINT V

### TRANSFER TO KANSAS IS NOT WARRANTED IN THIS MATTER


It is first submitted that venue is in fact proper in this District under 28 U.S.C. Section

1391(b)(2).  That section allows a civil action to be brought in "(2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated."  In the instant case, it is undisputed that

the License Agreements are at the heart of this dispute, both in reference to their breach, and in

reference to the continuing violations of Everlast's trademark rights by virtue of the defendants'

conduct after termination of the License Agreements.  It is also undisputed that the License

Agreements were negotiated and finalized by the physical presence of defendant Ringside in

New York City, and that representatives of Ringside often came to New York to conduct

business related to the License Agreements (see Neil Morton affidavit).


As set forth in *Gulf Ins. Co. v. Glasbrenner*, 417 F. 3d 353, 357 (2d Cir. 2005), the place

where a contract has been negotiated or executed may support venue in a matter involving said

contract.  In the present case, however, not only were the Agreements negotiated and finalized in

New York City, but the Ringside representatives often visited New York with respect to their

obligations under the Agreements.  See also *Shpak v. Curtis*,  2011 U.S. Dist. LEXIS 109011

(E.D.N.Y. 2011).


Consequently, it is submitted that "a substantial part of the events giving rise to the

claim" – to wit, the negotiation and finalization of the Agreements at issue, the visits by

Ringside's representatives, and their subsequent breaches – occurred in New York City.  Venue

is therefore appropriate in this District.


It is also respectfully submitted that transfer of this case to the federal court in Kansas is

not warranted under 28 U.S.C. Section 1404(a), which could allow for transfer "for the

convenience of the parties and witnesses, in the interest of justice."  It has been held that district

courts have broad discretion regarding determinations under Section 1404(a), and each case is

considered separately.  In addition:

> Some of the factors a district court is to consider are, inter alia: '(1) the plaintiff's
> choice of forum, (2) the convenience of witnesses, (3) the location of relevant
> documents and relative ease of access to sources of proof, (4) the convenience of
> parties, (5) the locus of operative facts, (6) the availability of process to compel
> the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106, 107 (2d Cir. 2006).  As set forth in the case

cited by defendants, a plaintiff's choice of forum is entitled to great deference in this analysis.

*Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637 (S.D.N.Y. 2008).

In addition, at this stage of the litigation, it is too early to tell what non-party witnesses, if any, will ultimately be required in this matter. The defendants do not even represent what non-party witnesses may be required to testify (they merely talk generally about counsel for the parties, and a representative of their bank, who may live in Colorado). Therefore, the second element listed above has little impact at the present time.

Concerning the location of relevant documents, in this day and age of electronic documentation, storage and transmittal, the actual physical location of documents is minimally pertinent, as documents are often exchanged through and by computers. This may be done regardless of where the parties or documents are physically located. *Shpak v. Curtis*, 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. 2011) ["'[i]n today's era of photocopying, fax machines and Federal Express, the location of documents' is insignificant, if not totally irrelevant."]. Regarding the convenience of the parties, obviously this cuts both ways. All of the plaintiff's anticipated employee witnesses are located in New York, whereas the defendants' party witnesses presumably are located in Kansas or nearby Missouri. This factor therefore also is of minimal significance.

As for the availability of process to compel attendance of witnesses, that factor is also not pertinent as to the witnesses who are principals of the party litigants, because, as noted above, the parties will no doubt want and require such witnesses to be available to testify. And at this juncture, it is too early to be able to determine what, if any, non-party witnesses may be involved in this litigation (and in addition, certainly out-of-state depositions can be taken and used at trial;

see *Shpak v. Curtis*, 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. 2011)). Additionally, the relative means of the parties is also not pertinent at present, as there is no evidence that defendants RAL and Combat Brands do not have the means to defend this action in New York.

And finally, the fact that New York law governs this action has also been held to be a factor in denying transfer to a different district. *Shpak v. Curtis*, 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. 2011).

It is therefore respectfully submitted that this suit should remain in this Court.

## CONCLUSION

For all of the reasons set forth above, and in the accompanying affidavits of Jed R. Schlacter and Neil Morton, it is respectfully submitted that the defendants' motion seeking to dismiss this case or to transfer it to Kansas, should be denied, and this Court should grant such other and further relief as it deems just and proper.

Respectfully submitted,

SCHLACTER & ASSOCIATES
Attorneys for Plaintiff

JED R. SCHLACTER (4874)

450 Seventh Avenue, Suite 1308
New York, NY 10123
212 695-2000

Dated: New York, New York
September 28, 2012